United States v. Settles is our fourth case for argument this morning. Mr. Henderson. Good morning. May it please the Court. I'm Peter Henderson. I'm here on behalf of Martel Settles. A sentence that exceeds the guidelines by more than doubling the range requires an especially compelling justification, and the justification here was not especially compelling. Why? Because it contains several errors of law. No, no. If the judge made errors, I understand that, but why does a sentence, approximately 200 percent of the guideline range, require compelling justification? We haven't said that. The Supreme Court hasn't said that. In fact, it is said that once the guideline range is correctly calculated, a district judge can use his own sentencing philosophy. That's right. It has to be consistent with the statute. So what this Court has said— compelling justification. It's just—well, I don't know where it comes from. Well, it's on page 960 of—volume 962 of Fed Third in United States v. Jones. That's where this Court said a 212, 215 percent variance requires— But where does it come from? It comes from Gall. I mean, it comes from what the Supreme Court has— The Supreme Court said in Gall that the greater the variance, the stronger the justification needed, which seems to me is short of saying 200 percent means compelling. They didn't say that. They didn't say anything like that. Right. This Court has said that. That's what— But where does it come from? It comes from— It's made up? It comes from Gall. No, it doesn't come from Gall. The word compelling is not in Gall, right? If we've made up something that is not supportable by the Supreme Court's decisions, maybe we need to unmake it up. I suppose you could. You certainly have the power to do that. The government hasn't asked you to do that. That has been the standard. It's not just Jones. We've seen in other cases where— So I suppose you're extrapolating from Gall that if it's the greater the variance upward, the more fulsome the explanation has to be, just to use a different word,  synonyms that one could think of for more than just a little bit. Right. The word I was thinking of, which is too strong, is airtight, meaning— That's not— And I don't think that's what the Court wants to adopt. I don't think we're going to go with airtight, but you could say an especially persuasive or some— We want to make sure it's not marred by an error, a misapprehension of what the guidelines recommend. That really is the essential error here. The district court said throughout that it was being guided by Section 5K2.6. And Section 5K2.6 tells a district judge you should go above the guidelines range if a dangerous weapon was used or possessed in the offense. Well, but that wasn't the only thing. I mean, I guess my issue here was, you know, the district judge initially does what he's supposed to do. He calculates the guidelines, you know, just straight up. But then he says, you know, that he finds Mr. Settle. Then he says, I'm going to go off into 3553. Mr. Settle doesn't really fit the paradigmatic, you know, person who has this 922G conviction. And instead of just listening to a lot of testimony or pondering the pre-sentence investigation report or whatever, he starts going through this sort of rump hypothetical guidelines calculation where, you know, flight, well, maybe it's not going to be two levels, but he keeps trying to reconstruct what this would look like. And if you're saying that was a clumsy process, I will agree with you. It was a clumsy process. But at the end of the day, he seems to say to me, I think, you know, this 87-month sentence for you is the right sentence. And then, of course, after Mr. Settle goes through his long and unfortunate rant, then he says, and if I had any doubt about it, you know, I'm now really sure that 87 months is the right level for you. So if he'd skipped all the shadow guidelines analysis or whatever we should call it, how could we disagree with him? This guy does have some pretty unimpressive things in his background. It's the reason I think the court should remand for resentencing to make sure that the district court correctly understands what the guidelines recommend, maybe avoids this, you know, shadow guidelines range that seems to be pulled out of nowhere, and says that one of my concerns is where do we get an 87-month sentence? That's seven years and three months, which is an odd sentence unless you're following the guidelines. And that seems to be where the judge got this particular term. Mr. Henderson, let me get you. I'll ask the same of Mr. Whelan. The way the district court referred to this shadow or phantom guidelines calculation is as a metrical check and balance. Do you think that's what we meant in Jones? No, I don't. Traditionally, the court on appeal has reviewed sentences to say, well, this isn't so bad because it roughly approximates this. So the difficulty that I have with the shadow or phantom guidelines calculation is how in the world are you going about it? Because with respect to the sentencing guidelines, you know as well or better than I do. There's all kinds of interpretive questions about terms and conditions. Provisions are either satisfied or they're not satisfied. And we have all kinds of arguments about that. It's binary that way. This phantom calculation or shadow is almost like, well, it's kind of close to this. And so I'm going to add a level. Did you take that from Jones? That's where the district court got it. No, I know. That's right. I did not take that from Jones. No. What Jones did was... And how do we conduct judicial review of it? I don't know. It's arbitrary. That's the point that I've made is if we're going to tie these... Right. And here's my real concern is district judges give a lot of deference to the guidelines. And they ought to. They're the product of empirical research. The Sentencing Commission reviews them. They draw lines. And we have very detailed provisions. If a district judge says, well, it doesn't matter what the text says. I'm going to add this level or this level that's not tied to anything. It's giving the imprimatur of the guidelines range to something that is not based on any empirical research. Actually, what the district court did here read to me like the world of departure before Booker. That's the way we told district judges they must handle departures. That they have to construct these alternative universes under guidelines to see whether the Sentencing Commission had fully considered everything, and if so, how far to depart. Is it the burden of your argument that what was compulsory before Booker is forbidden today? I think it's not the sentencing process that judges are instructed to engage in after Booker. What we're supposed to do, and this is... No, are you saying it's forbidden that this whole effort of going through and making alternative guideline calculations to see how far to go from the prescribed range, which used to be compulsory, is now legally verboten? No, I'm not making that argument. The argument that we're making is that the explanation of sentence is not sufficiently compelling, sufficiently well-reasoned, sufficiently justified. In other words, it is not reasonable. Well, I suppose so. That's what Gall says. The sentence has to be reasonable in the end. And a sentence that is based on arbitrary criteria, such as sort of picking offense levels out of a hat, is not the product of a reasonable process. We think it's a procedural problem. But that's the argument, and that's why... But he, over and over again, he says things like, well, this doesn't fit the flight guideline. So he rejects it, but then he, like, does one level instead of two, or he does, you know... Right. He just isn't... He's not really following the guidelines as guidance or not following them. He's making up his own guidelines. And what I'd suggest to the court in writing an opinion is, let's just follow Section 1B1.1. You calculate the guidelines range, you consider policy statements, and then it's 3553A. We're not recalculating things, we're not doing departures. It may not be legally... So you are saying that the process that used to be mandatory is now forbidden. It's not forbidden, but it can lead to arbitrary... But then I don't... It can lead to arbitrary results, which is what happened in this case. The explanation of sentence in this case was not well-reasoned. It was the product of an arbitrary process. And it misapplied the guidance of the Sentencing Commission at the end of the day. Thank you. Thank you, Mr. Henderson. Mr. Whalen. May it please the court. Thank you, Your Honors. My name is Nathaniel Whalen, here on behalf of the United States of America. I guess I know where I should get right to, Your Honors. I guess my first argument to Your Honors would be that this is an alternate basis, what this Court's deemed kind of a shadow guideline, because by that point the Court has already analyzed the 3553A factors and come up with its 87-month sentence. But how do we know it had already done that? He really... Does he start out by saying it's going to be an 87-month sentence? I thought he really just plunged right into what Judge Scudder noted, this alternative metric. That's not how I read the transcript, Your Honor. I read the Court is going through this 3553A analysis, and then at a certain point he shifts gears and says, I'm following Seventh Circuit precedent as I interpret it, and now I'm going to engage in this kind of mathematical cross-check. And so now I'm going to talk about the different guideline ranges that I think do or don't apply. He didn't make a comment at the beginning like this is not a guidelines case. That's correct, Your Honor. He comes out and he says essentially... Correctly, I'm going to go above. Yeah, I think what he says is I saw the guidelines as they were initially presented to me, and I couldn't believe how low the offense level was in this case because it called for 33 to 41. And he says I don't think that that's appropriate for all of the reasons under 3553A. I don't think that's appropriate. Well, you're right in that I'm looking around. There's so many page numbers here. It seems to be page 40 maybe of the transcript. It's right after he says the government has asked for the statutory maximum. That's 120 months, 10 years. He thinks that's too much, but he never quite says... And actually for the previous several pages, he's been talking about all sorts of reasons to give Mr. Settle's a higher sentence, but he doesn't mention a number. And that's when he segues over to the bottom of page 40, top of page 41, what would be a good check and balance to the variance, exactly what Judge Scudder pointed out. And that's when he goes through all of this, one point off, another point on, jumping up history, what do you glean from 5K2.6, which is a very awkward fit with a 922G conviction since given the language of it. Anyway, so then the 87 months doesn't come up until near the end of all of this after... That's correct, Your Honor. He doesn't say 87 months, but that... Excuse me. By that point, he's gone through the 3553A factors, and he said, you know, I've analyzed those. All right, stop. Now, here's what I'm going to do. I'm going to check my math going through this different way. I'm going to look at the guidelines akin to a former departure analysis and say, well, you know, this guideline doesn't really apply, but it applies halfway. But that's where he comes up with it, page 42 at the bottom. So it's a mathematical check and balance to my discretion, Mr. Settles, if I placed you in criminal history category 4 and looked at your range five offense levels higher, you would be looking at a sentence of 70 to 87 months, and that strikes me as a reasonable range. And then in the very next line he says, I believe that a sentence of 87 months is right for you. He mentions 5K2.2, and then Mr. Settles blows up for a while, and, you know, that's what happens. That's correct, Your Honor. But if you also look at his sentencing memo, which is docket entry 54, he starts talking on page 6. 6 and 7 is when he talks about the metrical check and balance. And on the bottom carryover paragraph on page 6, he says this cross check to section 3553A supports a sentence of 87 months, a sufficient but not greater than necessary. So the court's signaling to this court that it's reached 87 months through two different lines of analysis, the 3553A, and then this consideration of what wasn't accounted for by the guidelines. And I do want to address your question, Judge Scudder. I think this court didn't explicitly delineate to district courts how it should increase offense levels. As I read Ballard and I read Jones and I read Castillo, which is kind of the underpinning of all of these, it says if you're going to give an above guideline sentence, what you've got to do is you should go through the offense levels and kind of drag your finger down until you get to what you figure is the right one. And that's what I think this court told the district court to do in Ballard. It says consider, go through the offense levels and figure out when you're reaching the right range, kind of as a way to check what you're doing. I think that might be descriptively accurate. I have no idea how you do that. I agree with that, Your Honor, and I think that's what Judge Lichty was grappling with a little here. He was saying I've been told to do this metrical cross-check. So what do I do? I look at what's unaccounted for by the guidelines as it relates to Mr. Settles here. What's unaccounted for is the fact that he fled law enforcement with a firearm. It doesn't meet the definition of 3C1.2, but we're kind of halfway there, so I'm going to give that one offense level. And he talks about 5K2.6. Admittedly, that doesn't apply in every felon in possession case because it talks about the possession of a firearm. But what the district court quotes is the second sentence there, which is the extent of the increase should ordinarily depend on the dangerous of the weapon, the manner in which it was used, and the extent to which its use endangered others. And respectfully, I don't agree with defense counsel's statement that the court relied throughout on 5K2.6. The district court cites it twice, once in the sentencing memo on page 3 and on page 43 of the sentencing transcript. And it's the second sentence that it's quoting. It's not saying every felon in possession case, I'm going to apply this departure by analogy provision. It's saying the gun here wasn't just a gun in the trunk. The gun here was a loaded firearm in your waistband as you're banging down a door looking for a fight in which you throw when law enforcement is running away. That merits additional consideration. That merits a sentence above the guidelines because the guidelines haven't accounted for that. And that's what the court does throughout this metrical crosscheck, as it calls it. It's saying what hasn't been accounted for. The fact that you had this conviction that, for some reason, gets dismissed prior to sentencing, that isn't accounted for in your criminal history. The fact that you have 17 straight years of a sentence or being under charges, that isn't accounted for by the guidelines. Your criminal history is certainly accounted for, but someone in criminal history, not all Category 4 criminal histories are the same. It could be a couple of OWIs. It could be someone who's engaged in 17 straight years of crime, and the district court said that isn't accounted for, and so I'm going to account for it when I do this crosscheck. And it also referenced that extensively throughout the 3553 analysis. So if you look at the sentencing transcript as a whole, the district court justified its sentence multiple times over. It justified it through two different ways, and this court can certainly sit here and review the 3553A factors. It might not agree with the sentence the district court came up with, but the defendant hasn't raised a substantive reasonableness challenge. This court can look at this transcript and know what the district court did in its analysis of the 3553A factors, and that's what this court asks when it reviews for procedural reasonableness. Is the defendant's unfortunate extended colloquy relevant in your view at the end? I think the district court saw it the same way that Judge Wood quoted it as saying this is just confirmation that I got it right. You aren't accepting responsibility. The district court had already announced its intention to impose 87 months by this point. I think, candidly, it probably could have gone higher at that point if it had wanted to and said, you know, you got two levels for acceptance of responsibility. I'm not sure that applies anymore, and so now I'm going to engage in a different 3553A analysis, but it chose not to. I think it just looked at it as kind of another confirmation that it got the right result. Okay. So unless this court has any further questions, we would ask that you affirm the sentence. Thank you, Your Honors. Thank you very much. The case is taken under advisement.